IN THE UNITED STATES DISTRICT COURT
FOR TH NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID DE GROOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 08 C 1167 |
| ) | |
| SUBURBAN BANK & TRUST CO. ) | Judge Samuel Der-Yeghiayan |
| and SUBURBAN BANK & TRUST ) | Magistrate Judge Maria G. Valdez |
| 401(k) PROFIT SHARING PLAN, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' 12(b)(6) MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Suburban Bank & Trust Co. ("Suburban") and Suburban Bank & Trust 401(k) Profit Sharing Plan ("Plan"), respectfully file this 12(b)(6) Motion to Dismiss, and in support hereof state as follows:

### INTRODUCTION

David DeGroot ("Plaintiff") is attempting to take Suburban's offer to buy his stock, at a price he does not want to accept, and turn it into a ERISA claim for the denial of Plan benefits, a common law breach of fiduciary duty, a wrongful termination of his employment and a shareholder action under Illinois law. Plaintiff's claims are not ripe and must fail because the Complaint does not allege: (i) Suburban engaged in any wrongful conduct; (ii) that a request for benefits under the Plan was denied; or (iii) to the extent a request for benefits was denied, that Plaintiff exhausted the Plan's administrative remedies. Instead, Plaintiff alleges that his employment was terminated and—following the termination—Suburban made an offer to purchase his shares of stock in a parent corporation named Suburban Illinois Bancorp, Inc. ("SIB") that Plaintiff did not want to accept. Those allegations simply do not form the basis of

an ERISA claim or a breach of fiduciary duty against either defendant. Moreover, with regard to the Illinois Business Corporation Act claim in Count III, no facts are alleged which make that act applicable, much less state a claim.

## ARGUMENT

### I. Legal Standard Applicable To A Motion To Dismiss

Although in considering a motion to dismiss a complaint the Court must accept all well-pleaded facts as true and draw inferences in favor of the plaintiff, the Court is not required to ignore facts set forth in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Doughty v. Sheahan*, No. 96 C 2811, 1998 WL 120350, at *3 (N.D. Ill. March 13, 1998). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must include allegations respecting all material elements of all claims asserted – bare legal conclusions attached to narrated facts will not suffice." *Lockhart v. U.S.*, 961 F. Supp. 1260, 1264 (N.D. Ind. 1997). Plaintiff's Complaint fails to allege facts sufficient to state a claim upon which relief can be granted.

### II. Count I Fails To State A Claim Because The Complaint Fails to Allege That Plaintiff Was Denied Benefits Due Under The Plan, That Plaintiff Exhausted His Administrative Remedies, Or That Defendants Engaged In Any Wrongful Conduct.

#### A. Plaintiff's Claim is an Attempt to Recover Purported Benefits, Not a Claim for a Breach of Fiduciary Duty.

Plaintiff bases Count I of the Complaint on ERISA 29 U.S.C. §§ 1132(a)(1)(B) *and* 1132(a)(3), seeking the same relief under both sections, and asks the Court to determine the value of his shares and to force a purchase at that price. That sum is the "benefit" Plaintiff is seeking under the Plan. Section 1132(a)(1)(B) does allow a Plan participant—like Plaintiff—to recover benefits, enforce rights or clarify rights under the Plan. *Id.* However, before a suit under 1132(a)(1)(B) is ripe, Plaintiff must have requested and been denied the benefit sought. Because

there are no allegations in the Complaint which substantiate that necessary element of his claim, Count I must be dismissed.

In order to state a claim for benefits in a civil action, the plaintiff first must have asked for, and been denied, a claim under his or her benefits plan. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236-37 (7th Cir. 1997) (holding that plaintiff could not bring claim under ERISA because she had not received denial of her claim). "It is axiomatic that a plan participant must apply for the benefits to which he claims entitlement prior to suing for the wrongful denial of those benefits." *Fairchild*, 147 F.3d at 576. Thus a claim under 29 U.S.C. § 1132(a)(1)(B) does not accrue until a beneficiary has requested benefits under a plan and has been denied those benefits. *Fairchild*, 147 F.3d at 576; *see also Robyns*, 130 F.3d at 1236-37 (holding that plaintiff could not bring claim under ERISA because she had not received denial of her claim). If a plan requires an employee to make a written request for a benefit prior to a decision on whether that benefit will be provided, an employee must make the written request and be denied the benefit prior to bringing suit. *See Bekiroglu v. Paul Revere Life Ins. Co.*, 223 F. Supp. 2d 361, 367 (D. Mass. 2002).

According to the Summary Plan Description attached to Plaintiff's Complaint, in order to receive a benefit that has not been automatically granted, a beneficiary must: (1) make a written request for any benefits to which a beneficiary believes they are entitled; (2) wait until the Plan either grants or denies the claim; and (3) if the claim is denied, the claimant or his authorized representative may, within 60 days of the denial, appeal the Plan Administrator's decision denying the claim. (*See* Summary of Plan, Attached to Complaint, at 20.) Instead of alleging compliance with the Plan, Plaintiff alleges that "Suburban offered to buy back all of DeGroot's

[Plaintiff's] shares in the holding company," (Compl. at p.4 ¶12.), and that DeGroot and Suburban agreed that Suburban would repurchase the shares of SIB stock in his 401(k) following the end of his employment." (Compl. at p.4 ¶ 16.) Because the Complaint does not allege that Plaintiff either requested or was denied a benefit under the Plan, Count I fails to alleged facts which, if proven, would entitled him to the relief requested.

### B. As a Claim for Denial of Benefits, Plaintiff Must Allege His Administrative Remedies Have Been Exhausted.

Likewise, courts have held that a plaintiff must first exhaust his or her administrative remedies under a Plan prior to bringing a claim for benefits. *Stark v. PPM America*, 354 F.3d 666, 671 (7th Cir. 2004). In order to prevent plaintiffs from pleading themselves out of the requirement that they exhaust their administrative remedies, courts have not allowed plaintiffs to disguise their claims for benefits as a claims for breach of fiduciary duty or other statutory claims. *See Diaz v. United Agr. Employee Welfare Ben. Plan and Trust*, 50 F.3d 1478, 1483-84 (9th Cir. 1995). Therefore, to the extent this Court finds the Complaint alleges that Plaintiff has requested and been denied a benefit under the Plan, the Complaint must still be dismissed because Plaintiff has not alleged that he exhausted his administrative remedies under the Plan.

A beneficiary generally must exhaust his or her administrative remedies prior to bringing a claim under ERISA. *Riemma v. Bekins Van Lines Co.*, No. 95 C 1665, 1996 WL 99899, at *6 (N.D. Ill. Feb. 29, 1996) (holding that beneficiary's claims would have been barred had she attempted to bring suit prior to being denied claims because she would not have exhausted administrative remedies). This includes completing any procedures necessary under the plan to receive the requested benefit. *See id.* If a plan provides for an appeals process to request a denied benefit, the plaintiff must exhaust those appeals prior to bringing a civil action. *See Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 253 (3d Cir. 2002).

Although the Seventh Circuit has held that the district courts have discretion to waive exhaustion of administrative remedies, there are only two instances in which exhaustion generally may be excused: 1) where pursuing administrative remedies would be futile; and 2) where the plaintiff has been denied access to administrative remedies. *See Stark*, 354 F.3d at 671. Outside those two exceptions, the Seventh Circuit has expressed a strong policy of requiring ERISA plaintiffs to exhaust administrative remedies. *Powell v. AT&T Commc'n, Inc.*, 938 F.2d 823, 825-26 (7th Cir. 1991). Courts in this Circuit therefore begin any analysis of an ERISA claim with the premise that exhaustion of administrative remedies is required. *See Lapka v. Juno Lighting, Inc.*, No. 96 CV 6591, 1996 WL 102714, at *3 (N.D. Ill. Mar. 3, 1998).

Under Seventh Circuit law, Plaintiff in this case was required to allege he sought a benefit from Suburban, was denied that benefit and that he exhausted all administrative remedies under the Plan before instituting this action. (*See* Summary of Plan at 20.) Plaintiff's allegations make clear that he did not simply leave out of these necessary allegations, but, rather, that Suburban offered a certain price for Plaintiff's shares and Plaintiff was unhappy with that price. Thus, there are not set of facts consistent with the Complaint's allegations to suggest Plaintiff requested and was denied a benefit or that he exhausted any administrative remedies. Because Plaintiff's claim has not yet accrued and because he has not exhausted his administrative remedies, the Court should dismiss Count I.

C.   **Plaintiff's Section 1132(a)(3) Claim Must Be Dismissed Because Relief Would Be Available Under Section 1132(a)(1)(B).**

Where a plaintiff has the right to bring a claim under section 1132(a)(1)(B), that same plaintiff may not also bring a claim under section 1132(a)(3). *Clark v. Hewitt Assoc., LLC*, 294 F. Supp. 2d 946, 949-50 (N.D. Ill. 2003). This is true even where a claim under section 1132(a)(1)(B) may not be successful. *Id.* The test for determining whether a section 1132(a)(3)

claim may be brought is not whether the plaintiff could plead a viable section 1132(a)(1)(B) claim, but whether, as a plan participant or beneficiary, the plaintiff has the right to bring a claim in the first place. *Id.* at 950. Because the Complaint alleges that Plaintiff is a "Participant" that is vested in the Plan, he has a right to bring claims for lost benefits under 1132(a)(1)(B) and is barred from seeking relief under the catchall provision in 1132(a)(3). (Compl. at p.3 ¶¶ 8, 10.)

In *Clark*, for example, the court held that, even though the plaintiff's claim under section 1132(a)(1)(B) might be barred because a life insurance policy did not cover suicide, the plaintiff still had a *right* to bring a claim because she was a beneficiary under the policy. *Id.* The plaintiff therefore was barred from bringing a claim under section 1132(a)(3). *Id.* Likewise, in *Hedeen v. Aon Corp.*, the court dismissed a section 1132(a)(1)(B) claim and went on to dismiss a section 1132(a)(3) claim because it was duplicative in light of the fact that the plaintiff had the right to bring the 1132(a)(1)(B) claim in the first place. *See* No. 04 C 3360, 2004 WL 2434230, at *4-5 (N.D. Ill. Oct. 28, 2004); *see also Brosted v. Unum Life Ins. Co.*, 349 F. Supp. 2d 1088, 1092 (N.D. Ill. 2004) (holding that plaintiff could not bring section 1132(a)(3) claim where he had the right to bring section 1132(a)(1)(B) claim, even though 1132(a)(1)(B) claim would fail). Simply put, equitable relief under 1132(a)(3) (known as the "catch all" provision) is not proper where direct relief could be available under 1132(a)(1)(B). Plaintiff's 1132(a)(3) claim in this case therefore should be dismissed.

### D.    Count I Does Not Plead A Breach of Fiduciary Duty Because a Prohibited Transaction Never Took Place.

Even if the Court were to construe Count I as a breach of fiduciary duty claim rather than a claim for benefits, Count I still would fail because Plaintiff has not alleged a transaction that violates ERISA actually took place. Plaintiff claims that Suburban's offer to purchase his shares violates 29 U.S.C. § 1106(a)(1)(A). That section prohibits a plan fiduciary from exchanging plan

property with a party in interest unless, as allowed by 29 U.S.C. § 1108(e)(1), the exchange is for adequate consideration. But in order to state a claim under section 1106(a)(1)(A), a plaintiff must allege that a transaction actually took place. *Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996); *Qualey v. Jackson*, No. 07 CV 10910, 2007 WL 1836028, at *5 (E.D. Mich. June 25, 2007). If an ERISA fiduciary does not cause the plan to actually engage in a prohibited transaction, there is no claim under section 1106(a)(1)(A). *Qualey*, 2007 WL 1836028, at *5.

Here, Plaintiff does not allege that any transaction, much less a prohibited transaction, has taken place. Plaintiff only pleads that Suburban *offered* to purchase Plaintiff's shares. Plaintiff does not plead that the purchase ever occurred. Unless and until the purchase occurred, there is no claim under section 1106(a)(1)(A), and no breach of any fiduciary duty. Count I therefore must be dismissed.

### III. Count II Fails To State A Claim Because The Complaint Does Not Allege Any Rights Under The Plan Could Be Affected By Plaintiff's Termination.

Count II makes the bare conclusory statement that Suburban terminated Plaintiff's employment in violation of 29 U.S.C. § 1140 in order to deny him his rights under Suburban's employee benefits plan. The Complaint does not allege any facts which establish Plaintiff's termination had any adverse impact on his ability to obtain fair market value for his stock or obtain any other rights under the Plan.

Under section 1140, it is unlawful for an employer to "discharge" a participant in an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The primary purpose of section 1140 is to prevent employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights or other benefits. *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 127 (7th Cir. 1991). "The essence of § [1140's] purpose is thus

protection against adverse action by an employer that is motivated by a desire to diminish the costs of its benefits plans by preventing or retaliating for the use of such plans." *Lindemann v. Mobile Oil Corp.*, 940 F. Supp. 189, 193 (N.D. Ill. 1996).

Although the Complaint does alleged Plaintiff was terminated with the intent to deprive him of the fair market value of his stock, there is no allegation as to how such an act could possibly have such an impact. Plaintiff fails to allege any facts showing that the value of his stock was at all related to his continued employment with Suburban. This is especially true given the Complaint's allegation that the Plaintiff "agreed" to sell his stock to Suburban when his employment was terminated. (Compl. at p.4 ¶ 16.) Therefore, Count II must be dismissed for failure to allege facts which will support a *prima facie* case of wrongful termination under section 1140.

### IV.   Count III Fails To State A Claim Upon Which Relief Can Be Granted Because Suburban Did Not Owe A Duty To Purchase Plaintiff's Shares.

Plaintiff's third count relates solely to Suburban's offer to repurchase the shares Plaintiff held privately, and thus does not implicate Suburban's actions with regard to the shares Plaintiff held in his 401(k) plan. Count III seemingly intertwines two different claims in the same count: one for breach of fiduciary duty, and one for violation of 805 ILCS 5/12.56. The breach of fiduciary duty claim makes bare bones legal conclusions that Suburban breached a fiduciary duty to buy Plaintiff's shares at specific price. Count III also alleges that Suburban oppressed Plaintiff in violation of 805 ILCS 5/12.56 by not purchasing Plaintiff's shares at a specific price. Both claims fail as a matter of law. First, Illinois courts have held that corporations, such as Suburban, do not owe shareholders a fiduciary duty or a duty to buy officers' or directors' shares. Second, Plaintiff fails to state a claim under 805 ILCS 5/12.56 because he does not allege any wrongdoing by Suburban's officers or directors.

### A. Suburban Did Not Owe Plaintiff a Fiduciary Duty or a Duty to Purchase Plaintiff's Shares.

Plaintiff's fiduciary duty claim is premised on the theory that Suburban owed a fiduciary duty to Plaintiff to purchase his shares in SIB at a certain price. Contrary to Plaintiff's purported legal conclusions, corporations do not owe their shareholders a fiduciary duty. "It is black letter law in Illinois" that "a corporation—as distinct from its officers and directors—does not owe a duty to shareholders." *Small v. Sussman*, 713 N.E.2d 1216, 1221 (Ill. App. Ct. 1999); *see also* 13 Ill. Law & Prac., Corporations §131 ("a corporation, as distinct from its officers and directors, does not owe a fiduciary duty to shareholders").

Likewise, a corporation does not have a duty to purchase a former director's or officer's shares after that individual's employment is terminated. "Absent a contractual or statutory requirement to the contrary, a shareholder may not force a corporation to redeem or repurchase shares of stock." *Christian County Farmers Supply Co. v. Rivard*, 476 N.E.2d 452, 453 (Ill. App. Ct. 1985). Plaintiff has not alleged the existence of any such contract.

Here, Count III attempts to assign a fiduciary duty to Suburban to buy Plaintiff's SIB shares at a given price. Plaintiff alleges that "Suburban owed a fiduciary duty to DeGroot as a minority shareholder as well as a duty to avoid self-dealing." (Compl. at p.6 ¶ 16.) Those allegations cannot form a claim upon which relief can be granted because, as a matter of Illinois law, Suburban cannot be held to owe Plaintiff a fiduciary duty.

Suburban also was not under a duty to offer to purchase the shares in the first place. As the *Rivard* court held, Illinois law is clear that a corporation does not have a duty to purchase its own shares from shareholders or directors. Plaintiff would have this Court reach even further and require a corporation to purchase shares in a separate parent company. Plaintiff has not alleged any facts to support such a far-reaching duty. Count III therefore must be dismissed.

### B. Plaintiff Does Not Plead a Cause of Action Under 805 ILCS 5/12.56.

Plaintiff also does not plead a claim under 805 ILCS 5/12.56. Although Plaintiff does not indicate which portion of 805 ILCS 5/12.56 he has brought this action under, it appears that Plaintiff is relying on section 5/12.56(3).[1] Section 5/12.56(3) states:

> In an action by a shareholder in a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that (3) the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder

Thus the very language of the statute itself requires that the action be brought against the corporation in which the shareholder holds shares. The statute also requires an allegation that a director or someone in control of the corporation act illegally, oppressively, or fraudulently.

Here, Plaintiff has brought his claim against Suburban, a company in which he does not allege he holds any shares. Moreover, even if Plaintiff had named SIB—the company in which he does own shares—as a defendant, he has not alleged that Suburban is a director or entity in control of SIB. Plaintiff therefore has not alleged facts sufficient to state a claim under section 5/12.56. Count III therefore should be dismissed.

---

[1] Sections 12.56(1) and 12.56(2) both relate to circumstances in which directors of a corporation are deadlocked. See 805 ILCS 5/12.56(1)-(2). Those sections clearly do not relate to Plaintiff's allegations. Section 12.56(4) relates to the waste of corporate assets. See 805 ILCS 5/12.56(4). Again, that section clearly is not implicated here.

## CONCLUSION

Plaintiff should not be allowed to turn an offer to purchase his stock into a violation of ERISA or Illinois law. He has not alleged that he made a claim for the purchase of his stock under ERISA nor has he alleged any duty on Suburban's part to purchase his stock. Plaintiff therefore has not pleaded a claim under ERISA or under Illinois law. The Court should dismiss the Complaint.

Dated: May 8, 2008

                                              Respectfully submitted,

                                              SUBURBAN BANK & TRUST CO. and
                                              SUBURBAN BANK AND TRUST 401(k)
                                              PROFIT SHARING PLAN

                                              By:   s/ Michael J. Scotti, III
                                                        One of their attorneys

Michael J. Scotti, III #6205868
Daniel S. Dooley # 6274831
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6374
Facsimile: (312) 360-6994