IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID DEGROOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-C-1167 |
| | ) | |
| SUBURBAN BANK & TRUST CO., and | ) | Judge Samuel Der-Yeghiayan |
| SUBURBAN BANK & TRUST 401(k) | ) | Magistrate Judge Maria G. Valdez |
| PROFIT SHARING PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS**

*Introduction*

Defendants (Suburban Bank & Trust Co. ("Suburban") and Suburban Bank & Trust 401(k) Profit Sharing Plan ("Plan")) seek to dismiss Plaintiff David DeGroot's ("DeGroot") entire complaint on the attenuated basis that DeGroot is seeking a benefit under the Plan, rather than seeking equitable relief for Defendants' breach of the fiduciary duty owed to DeGroot as a participant in the 401(k) Plan in accordance with 29 U.S.C. § 1104(a)(1). Contrary to Defendants' arguments, DeGroot has sufficiently stated a claim for fiduciary breach pursuant to 29 U.S.C. § 1132(a)(3), as Defendants acted in their own interest, rather than DeGroot's, by refusing to purchase at fair market value his shares of stock held both in the Plan and individually. Furthermore, a remedy under 29 U.S.C. § 1132(a)(1)(B) is sought only in the alternative because an equitable remedy is the only basis for full relief. Unlike a denied claim for disability or health insurance, or even a claim for pension benefits which would typically be brought under § 1132(a)(1)(B), DeGroot is not seeking a benefit *per se*; he is seeking a fair valuation of his benefits which he contends has been diminished due to Defendants' fiduciary breach. Defendants

have seemingly ignored that DeGroot is seeking equitable relief requiring Defendants to act as proper fiduciaries free from behavior prohibited by the ERISA statute, which no legal remedy can provide. Regardless, the Federal Rules of Civil Procedure permit DeGroot to seek equitable relief under § 1132(a)(3) and simultaneously seek relief in the alternative under § 1132(a)(1)(B). *See* Fed. R. Civ. P. 8(d)(2).

Also, pursuant to the notice pleading requirements of Federal Rule of Civil Procedure 8, DeGroot has sufficiently pled causes of action for improper termination intending to deprive him of the full value of his stock in violation of 29 U.S.C. § 1140, as well as for his supplemental jurisdictional claim alleging breach of the Illinois Business Corporation Act of 1983 for engaging in self-dealing and oppression. Even with heightened pleading requirements recently promulgated by the Supreme Court, all three of DeGroot's claims are properly alleged and should not be dismissed, as Defendants have properly been placed on adequate notice of the nature of the DeGroot's claims. *See, Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

**I.    Legal Standard Applicable To A Motion To Dismiss**

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief in order to give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). While a complaint attacked by a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do; factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Although these requirements do not mandate heightened fact pleading of specifics, they do require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618 (7th Cir. 2007); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 504 (7th Cir. 2008). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Segal*, 517 F.3d at 503; *Bressner v. Ambroziak*, 379 F.3d 478, 480 (7th Cir. 2004)**;** *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). As will be elaborated upon below, DeGroot's complaint meets all of the foregoing requirements.

## II.     Count I Properly States a Claim for Breach of Fiduciary Duty

### A.     Plaintiff Is Not Seeking Benefits Under § 1132(a)(1)(B).

Defendants rest their entire first argument on a misrepresentation of Count I of Plaintiff's complaint. Defendants erroneously assert that DeGroot based Count I of his Complaint on both 29 U.S.C. § 1132(a)(1)(B) *and* § 1132(a)(3). (Def.'s Motion to Dismiss at 2)(emphasis in original). Defendants apparently ignore the alternative pleading set forth Paragraph 18 of Count I which explicitly states that "pursuant to 29 U.S.C. § 1132(a)(1)(B) or § 1132(a)(3), the court must determine the fair market value for the shares at issue." (emphasis added). The Federal Rules of Civil Procedure permit DeGroot to plead alternative claims under different sections of the ERISA statute. According to Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if

3

any one of them is sufficient." *See Brown v. United States*, 976 F.2d 1104, 1108 (7th Cir. 1992) (holding that Rule 8 specifically allows parties to pursue alternative claims.)  *Also see Spano v. Boeing Co.*, 2007 U.S. Dist. LEXIS 28774 *17 (N.D. Ill. April 17, 2007)("Rule 8 authorizes a plaintiff to plead claims in the alternative under ERISA § 502(a)(2) and (a)(3)."); *Donaldson v. Pharmacia Pension Plan,* 435 F. Supp. 2d 853, 869 n.5 (S.D.Ill. 2006)(holding that Rule 8 permitted the plaintiffs to plead alternative claims under ERISA § 502(a)(2) and (a)(3)).

Moreover, it is clear DeGroot is primarily bringing a claim under § 1132(a)(3) since both paragraph 17 and 18 of Count I describe in detail the fiduciary duties required of plan administrators by ERISA and set forth underlying allegations explaining how Defendants allegedly breached that duty.  DeGroot specifically alleges that Defendants did not investigate proposed transactions with the "care, skill, prudence, and diligence" required by fiduciaries in 29 U.S.C. § 1104(a)(1)(B), and also states that Defendants refused to buy DeGroot's shares for "adequate consideration" in violation of 29 U.S.C. 1108(e)(1).  (Complaint at 5).  Indeed, DeGroot's request for relief is focused on seeking equitable relief from a fiduciary breach; i.e., the court's determination of the fair market value of DeGroot's shares. Despite these clear allegations of fiduciary breach, Defendants have confused the facts alleged by DeGroot in his complaint, attempting to establish DeGroot seeks a legal remedy. Again, as DeGroot noted throughout Count I and in the Nature of Action section in the Complaint, he is challenging Defendants' fiduciary breach and seeks as appropriate equitable relief the determination of the fair market value of DeGroot's shares of bank stock. (Complaint at 1-5).  Because DeGroot did not specifically request a "benefit" under § 1132(a)(1)(B), the rest of Defendants' first argument regarding the ripeness of a § 1132(a)(1)(B) suit is irrelevant. (Def.'s Motion at 2-4).

Defendants appear to argue that DeGroot is seeking a "benefit" under § 1132(a)(1)(B simply because a "sum" of money is involved in the equitable relief at stake. (Def.'s Motion at 2). Yet again, Defendants misrepresent DeGroot's claim as he is not asking for a monetary award; he is asking the court to compel Defendants to act as proper fiduciaries by valuing DeGroot's stock at fair market value. Equitable remedies often result in money awarded to the plaintiff, but that does not render them legal remedies. For instance, in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000), the Seventh Circuit held that restitution is appropriate equitable relief under § 1132(a)(3), which allowed the plaintiff the opportunity to make a COBRA payment which then required the plan to pay her medical expenses. *Id*. Although the plaintiff was entitled to receive money in the form of health insurance indemnity, the Seventh Circuit ruled the plaintiff properly sought relief for the defendant's fiduciary breach, not a legal monetary remedy.

Indeed, DeGroot has plainly alleged a fiduciary breach rather than presenting allegations seeking a "benefit" under the Plan. DeGroot's claim is therefore akin to *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir. 1993), where the court found Aetna may have manipulated its position as insurer to its own benefit rather than the plaintiff's by failing to give full and complete material information concerning an agreement it asked plaintiff to sign. DeGroot similarly alleges that Suburban acted to benefit itself, rather than DeGroot, by offering to repurchase his shares of stock below fair market value, and at a minority discount even though DeGroot originally purchased the shares at controlling interest value.

Also, the Supreme Court has found that "to participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries'", thus

5

constituting a breach of fiduciary duty. *Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996). Correspondingly, Defendants in this case have likewise committed a clear fiduciary breach; they failed to act in DeGroot's interest by improperly valuing his stock and by seeking to purchase his shares of stock at a minority discount valuation even though the stock had been purchased at a controlling shareholder premium. (Complaint at ¶ 9). Accordingly, DeGroot's complaint asks the Court to equitably remedy the situation by requiring Defendants to purchase DeGroot's stock at fair market value. DeGroot is <u>not</u> seeking a benefit *per se*; he is seeking to remedy a fiduciary breach in order to receive proper compensation for his shares of stock. Thus, Count I of DeGroot's complaint properly states a claim for a breach of fiduciary duty and should not be dismissed.

  Moreover, even if DeGroot has an available claim pursuant to 29 U.S.C. § 1132(a)(1)(B), that would not foreclose his alternate claim under § 1132(a)(3). In contemplating the overlapping of claims under § 1132(a)(1)(B) and § 1132(a)(3), the Supreme Court noted in *Varity, supra.,* "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will <u>likely</u> be no need for further equitable relief, in which case such relief would not <u>normally</u> be 'appropriate.'" (emphasis added). 516 U.S. at 515. That language opens the door to situations where both claims may co-exist. Indeed, in *Parente v. Bell Atlantic*, 2000 U.S. Dist. LEXIS 4851, *15-16 (E.D.Pa. April 17, 2000), the district court relied on *Varity* in holding that the plaintiff's claim for equitable relief was not precluded by her alternative claim for benefits until and unless it was determined that such recovery provided adequate relief. The court noted that *Varity* requires an inquiry into whether Congress has provided equitable relief for a beneficiary's injury, and a plaintiff is only precluded from seeking relief under § 1132(a)(3) when a court determines "that plaintiff *will certainly receive* or *actually receives* adequate relief

for her injuries under § 1132(a)(1)(B) or some other ERISA section." (emphasis in original). *Id*. at *11. *Also see Galutza v. Hartford Life and Accident Ins. Co*., 2008 U.S. Dist. LEXIS 45781, *8-9 (N.D.Ok. June 12, 2008)(holding plaintiff was permitted to bring claims under both § 1132(a)(1)(B) and § 1132(a)(3) "until such time as it may be determined whether § 1132(a)(1)(B) affords him adequate relief."). Hence, in accordance with the foregoing authorities, DeGroot has properly pled a claim for fiduciary breach under § 1132(a)(3), and an alternative claim for benefits under § 1132(a)(1)(B). DeGroot's claims should therefore not be dismissed.

### B.    Adequate Relief Is Not Available To DeGroot Under § 1132(a)(1)(B).

Defendants make the equally misplaced argument that DeGroot's § 1132(a)(3) claim must be dismissed, asserting the availability of relief under § 1132(a)(1)(B). Defendants rely on *Clark v Hewitt Assoc., LLC*, 294 F.Supp. 2d 946, 949-50 (N.D. Ill. 2003) for the proposition that a plaintiff may not bring a claim under § 1132(a)(3), when he has a right to bring a right to bring a § 1132(a)(1)(B) claim, regardless of whether that claim would be successful. Yet *Clark* is easily distinguishable because the plaintiff in that action was seeking life insurance proceeds – a pure monetary remedy that fit precisely within the parameters of 29 U.S.C. § 1132(a)(1)(B) – "to recover benefits due … under the terms of the plan." Here, while DeGroot is arguably seeking to "clarify his rights to future benefits under the terms of the plan," another (a)(1)(B) remedy available to him - which is why he pled in the alternative, that is not the main thrust of the complaint. Rather, he is seeking a fair appraisal of the stock that Suburban agreed to purchase, a purely equitable claim. Suburban had a fiduciary duty to act in DeGroot's interests as a plan participant, which included the obligation to value plan assets at fair market value. DeGroot alleges Suburban breached that duty, and DeGroot has asked the court for the equitable relief

7

necessary to remedy that breach – determining the fair market value of DeGroot's shares of stock and requiring Defendants to purchase the stock at that price.  The request for relief cannot be characterized as a claim for plan benefits, since DeGroot is seeking to compel Defendants to perform their plan duties.

DeGroot's claim is analgous to *Black v. Standard Ins.Co.,* 373 F. Supp. 2d 897, 901 (E.D. Wisc. 2005), where the court refused to determine at an early stage of the pleadings whether the plaintiff would prevail on both a benefits claim and fiduciary breach claim. The court reasoned that "a district court should generally not dismiss a § 1132(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case" because it is too early to tell whether relief is available under § 1132(a)(1)(B), the plaintiff may be alleging different facts under each claim, and, the Federal Rules of Civil Procedure expressly allow this type of alternative pleading.  *Id*. at 901-03.

Similarly, here too, it would be premature to determine whether a legal remedy requesting benefits would provide DeGroot with an adequate remedy. Without considerations of "equitable relief," Defendants would not be responsible for fulfilling their equitable duty to fairly value DeGroot's shares.  Thus, DeGroot's fiduciary breach claim is proper since, as the Supreme Court held in *Varity*, 516 U.S. at 509, a participant may bring an action against a plan fiduciary for breach of fiduciary obligations when no other relief is available.

Contrary to Defendant's assertions, direct relief here under § 1132(a)(1)(B) is most likely inadequate. DeGroot's only remedy is one that requires Defendants to act in accordance with their statutory fiduciary obligations.  Consequently, DeGroot's § 1132(a)(3) claim is proper and should not be dismissed.

### C. DeGroot Has Exhausted His Administrative Remedies.

To the extent that DeGroot had pled an alternative claim for benefits under § 1132(a)(1)(B), he has sufficiently alleged both a denial of benefits and adequate exhaustion of pre-suit appeals, contrary to Defendants' allegations. (Def.'s Motion at 2-5). Defendants assert that DeGroot's alternative claim must be dismissed because he has not alleged that he sought a benefit from Suburban, that he was denied those benefits and then exhausted all administrative remedies before filing suit. (Def.'s Motion at 5). To the contrary, as with the prior argument, DeGroot's allegations are sufficient in these areas to put Defendants on notice of the basis of the benefit claim he is alternatively seeking. DeGroot alleged that he and Suburban agreed that Suburban would repurchase his shares of stock following his termination, and further alleged that Suburban improperly valued the stock, which denied DeGroot the benefits he was owed and was seeking. (Complaint at 4-5). These allegations sufficiently put Defendants on notice that DeGroot sought benefits (the fair market valuation of his stock), was denied that benefit by Suburban's inadequate valuation, and at that point DeGroot had exhausted his administrative remedies. DeGroot could take no further administrative action as Suburban would not agree to pay him the fair market value of his shares and no other avenues of appeal were made known to him.

Moreover, as further evidence of DeGroot's attempts to administratively resolve the issue before filing suit, Plaintiff has attached his initial demand letter requesting the purchase of his stock at an appropriate price and asking that his demand be considered an appeal in accordance with 29 U.S.C. § 1133. (See Exhibit A). Again, Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give a defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 127 S.

Ct. at 1964-65.  In fact, all of the cases cited by Defendants in their exhaustion argument are cases where this issue was decided at summary judgment,[1] which is further evidence that these issues are not to be decided at the motion to dismiss level, so long as the defendant has been put on sufficient notice that the plaintiff is making a § 1132(a)(1)(B) benefits claim. That notice requirement has been met here; DeGroot's alternative benefits claim should not be dismissed.

> **D.    Suburban Committed a Prohibited Transaction By Failing to Offer Adequate Consideration For DeGroot's Shares of Stock.**

Defendants contend that Suburban did not commit a prohibited transaction in violation of § 1106(a)(1)(A) simply because DeGroot did not accept Suburban's unfair purchase price for his shares of stock. (Def.'s Motion at 6).  Yet, Suburban's "prohibited transaction" occurred when it offered to repurchase DeGroot's shares but then offered inadequate consideration for the transaction. Defendants rely on *Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) for the proposition that a transaction must actually take place to state a claim under § 1106(a)(1)(A), but *Spink* does not specify when a "prohibited transaction" takes place  The Ninth Circuit has shed some light on this issue, and found that an agreement or contract to perform a transaction qualifies as the prohibited transaction itself. *M & R Inv. Co. v. Fitzsimmons*, 685 F.2d 283, 287 (9th Cir. 1982).  In that case, the defendant asserted that no prohibited "lending of money" took place in violation of § 1106(a)(1)(A), because the loan proceeds were never disbursed and the loan contract was a separate part of the transaction not prohibited by ERISA. *Id*.  The Ninth Circuit rejected that argument stating it "ignores the realities of contractual transactions, and it would clear the way for exactly the kind of abuses ERISA is intended to prevent." *Id*.  The Ninth Circuit reasoned that disbursement of funds was meaningless without the contract, and that

---

[1] *Riemma v. Bekins Van Lines Co.*, No. 95 C 16665, 1996 WL 99899, at *6 (N.D.Ill. Feb. 29, 1996) cited by defendant was a motion to dismiss case but it involved ERISA preemption, not exhaustion of administrative remedies.

"culpability arises with the contract's creation" while the prohibited relationship existed. *Id*. Finally the Ninth Circuit also noted that regarding the contract as separate from the transaction would "undercut the statutory purpose of ERISA" which was to protect pensions and other delayed compensation for the benefit of employees. *Id*.

Similarly, Suburban committed a prohibited transaction when it valued plan assets in connection with a purchase agreement at less than fair market value, and by utilizing a method of valuation (minority interest discount) that diminished the share price from the controlling interest premium at which the shares had been purchased. The offer cannot be separated from the transaction of purchasing the shares since, without the prohibited action, the purchase would never occur. Moreover, Suburban would have been exempt from the § 1106(a)(1)(A) prohibited transactions clause had it offered adequate consideration for DeGroot's shares of stock.

ERISA defines "adequate consideration" as the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005). To rely on the adequate consideration exemption, a fiduciary must establish the asset was not sold for more than fair market value and that the fair market value was determined in good faith by the fiduciary. *Id*. Here, Suburban had DeGroot's shares of stock appraised using the lower "minority interest" valuation method which is not the valuation rate at which DeGroot purchased his stock, nor the method which Suburban had previously used to appraise shares of stock. Indeed, Defendants have not even attempted to argue that Suburban tried to purchase DeGroot's shares for "adequate consideration." Defendants present no argument that Suburban's prohibited transaction was exempt under § 1108(e)(1); accordingly, it is assumed that Defendants agree that Suburban failed to offer fair market value for DeGroot's

11

shares of stock. Suburban's agreement to repurchase stock from DeGroot was thus a prohibited transaction which did not fall under any exemption, and DeGroot's § 1106(a)(1)(A) claim is proper.

### III.     DeGroot Properly States a Claim Under 29 U.S.C. § 1140.

Defendants tenuously argue that DeGroot has not properly stated a claim under § 1140 because he has not alleged any facts which establish his termination affected his ability to obtain fair market value of his stock. (Def.'s Motion at 7). To the contrary, DeGroot's complaint meets notice pleading requirements by putting Defendants on notice of the basis of his claim. Fed. R. Civ. P. 8(a). The Seventh Circuit has noted that Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough" 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) citing *Twombly*, 127 S. Ct. at 1964. In *Killingsworth*, the Seventh Circuit further interpreted the Supreme Court federal pleading standards to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Id*. *Also see, Weatherly v. Illinois Bell Tel*., 856 F. Supp. 1301, 1304 (N.D. Ill. 1994)(the court found plaintiff's § 1140 allegations sufficient to defeat defendant's motion to dismiss as notice pleading requires only a "short and plain statement" that gives defendant fair notice of claim and grounds on which relief is sought). DeGroot's complaint contains substantial factual detail and is far from "sketchy," undeniably providing Defendants with fair notice of the claims alleged and the basis for those claims. Section 510 of ERISA makes it unlawful for an employer to discharge employees for exercising their right to benefits. 29 U.S.C. § 1140. To prevail under Section 510, the employee

must prove the employer had the requisite specific intent - that the adverse employment action was executed for the purpose of depriving the employee of benefits. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). However, a plaintiff is not required to prove that this interference was the sole reason for his discharge; he is only required to prove that the employer's desire to interfere with his benefits *contributed* to its decision to terminate him. (emphasis in original). *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997). DeGroot alleged that Suburban terminated his employment to deprive him of the fair market value of his stock in order to treat him as a minority shareholder rather than as a member of the control group. (Complaint at 1, 6). DeGroot further alleged that upon termination, Suburban agreed to purchase his shares of stock based on a "minority interest" valuation method, resulting in a discounted valuation from the price at which DeGroot purchased the shares, as well as a lower valuation than the shares were previously appraised at, and a lower valuation than Suburban's other stock purchases. (Complaint at 3-4). Accordingly, DeGroot's claim that Suburban terminated him with the intent to deprive him of the fair market value of his shares is sufficiently pled. Once terminated, Suburban knew it could make the low purchase offer to DeGroot and force him into minority shareholder status. These allegations are sufficient to put Defendants on notice of the basis of DeGroot's § 1140 claim and the relief which he is seeking.

**IV.    DeGroot's Count III Properly States a Claim Under 805 ILCS 5/12.56.**

Defendants wrongly assert that DeGroot failed to properly state a claim under 805 ILCS 5/12.56 based on a misinterpretation of the statute. Defendants claim the language of the statute requires the claim to be brought against the corporation in which the shareholder holds shares, and that a complaint contain allegations that a director or someone in control of the corporation act illegally, oppressively or fraudulently. (Def.'s Motion at 10). Yet 805 ILCS 5/12.56 does not, in

13

fact, explicitly limit the parties or entities subject to suit under the statute. Section 5/12.56(3) states "[i]n an action by a shareholder <u>in</u> a corporation," the court may order remedies "if it is established that the directors <u>or those in control of the corporation</u> have acted, are acting, or will act in manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder." (emphasis added). Here, DeGroot has alleged he is a SIB shareholder and that Suburban - the entity in control of the corporation in which he holds shares – acted oppressively by offering to repurchase DeGroot's shares of stock at less than the shares' fair market value. (Complaint at 3, 6). DeGroot established that SIB is under the control of Suburban by alleging that Suburban formed SIB as a holding company. (Complaint at 3). Indeed, SIB and Suburban are in essence the same entity, as Suburban is a wholly-owned subsidiary of SIB and SIB owns no other entity and has no other material assets other than 100% ownership of Suburban. Suburban further established the seamlessness between the two groups by offering to purchase DeGroot's shares of SIB, which only the Chairman of SIB is authorized to do. (Complaint at 4). Defendant's assertions are erroneous, as DeGroot has sufficiently alleged a claim pursuant to the statutory language of 805 ILCS 5/12.56.

DeGroot's claim is similar to the plaintiff's 805 ILCS 5/12.56 action in *Flanagan v. Bernstein*, 1996 U.S. Dist. LEXIS 1915, *7 (N.D. Ill. Feb. 22, 1996), where the court held plaintiff had met the liberal notice-pleading requirements of Fed. R. Civ. P. 8. In *Flanagan*, the defendants asserted in a Rule 12(b)(6) motion to dismiss that neither shareholder status nor any misconduct, oppression or waste had been alleged. *Id*. at *7-9. The Court denied the defendants' motion, finding it sufficient for the plaintiff to allege he had purchased shares of stock, and that defendants controlled the corporation and had acted oppressively toward its shareholders. *Id*. The Court reasoned that "plaintiffs need not plead all the facts necessary to carry its burden of persuasion on each element. Instead, plaintiff must plead all the elements and at this stage the court assumes they

14

will be proven at trial." *Id*. at *7. The Court further noted that while the plaintiff's conclusory statements were probably insufficient to survive a motion for summary judgment, "a motion to dismiss serves a wholly different function, it tests the sufficiency of the complaint, not the evidence." *Id*. at *10. As noted above, DeGroot made similar well-pled factual allegations in Count III of his complaint, thus satisfying the liberal notice-pleading requirements to place Defendants on notice of the claims against them. DeGroot's 805 ILCS 5/12.56 claim is therefore proper and should not be dismissed.

Finally, Defendants misread Count III of DeGroot's complaint by asserting that DeGroot has alleged Suburban owed a fiduciary duty to purchase DeGroot's shares of stock. DeGroot specifically alleged the court has the power to remedy Defendants' 805 ILCS 5/12.56 violations of oppression and self-dealing. (Complaint at 6). Nowhere in the complaint does DeGroot allege that Suburban had a fiduciary duty to purchase DeGroot's shares of stock. Rather, DeGroot merely indicates the remedy he is seeking for Defendants' unlawful acts. DeGroot does not allege that Suburban owed a fiduciary duty to DeGroot as minority shareholder, rather the actual violation alleged was that of oppression and self-dealing by Suburban as the entity in control of SIB, and 805 ILCS 5/12.56 expressly provides shareholder remedies for this violation. Again, DeGroot has sufficiently alleged a cause of action pursuant to 805 ILCS 5/12.56.

## CONCLUSION

In light of the forgoing, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss Plaintiff's Complaint.

Dated:  June 30, 2008                                             /s/ Mark D. DeBofsky
                                                                  _____
                                                                  One of the attorneys for Plaintiff

Mark D. DeBofsky
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60602
(312) 372-5200
FAX (312) 372-2778

## CERTIFICATE OF SERVICE

TO:    Michael J. Scotti, III
       Daniel S. Dooley
       Freeborn & Peters LLP
       311 South Wacker Drive, Suite 3000
       Chicago, Illinois 60606

The undersigned attorney hereby certifies that on June 30, 2008, he electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to Micahel J. Scottie, III and Daniel S. Dooley, the above named attorney, and that I hereby certify that I have mailed via the United States Postal Service the document to the following non-CMF/ECF participants: N/A


|  |  |
|---|---|
| Daley, DeBofsky & Bryant<br>55 West Monroe, Suite 2440<br>Chicago, Illinois 60603<br>(312) 372-5200<br>(312) 372-2778 (fax) | s/ Mark D. DeBofsky<br>Mark D. DeBofsky<br>Attorneys for Plaintiff<br>David DeGroot<br>mdebofsky@ddbchicago.com |