LAW OFFICES

# Daley, DeBofsky & Bryant

55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

VOICE (312) 372-5200
FAX   (312) 372-2778
WEB   ddbchicago.com

Frederick J. Daley, Jr.
Mark D. DeBofsky
David A. Bryant
Marcie E. Goldbloom
James R. Comerford
Violet H. Borowski
Barbara H. Borowski
Gregory A. Benker
Sandra Dye

Of Counsel
Heather F. Aloe

October 29, 2007

Ms. Blanche E. Hill
Chairman/President/CEO
Suburban Illinois Bancorp, Inc.
150 Butterfield Road
Elmhurst, Illinois 60126
**BY CERTIFIED MAIL**

RE:   David DeGroot's Qualified and Common Stock Holdings in Suburban Illinois Bancorp, Inc.

Dear Ms. Hill,

David DeGroot retained our office to represent him in the obtaining a satisfactory severance of his employment relationship with your organization, including the sale of his Suburban Illinois Bancorp, Inc., common stock holdings held both privately and in the Suburban Bank & Trust Co. 401(k) Profit Sharing Plan. This letter constitutes notice of our representation of Mr. DeGroot and confirms that we are acting as his duly appointed representative.

As an initial matter, pursuant to 29 U.S.C. §1024(b), please immediately provide us with a copy of the following documents related to the Suburban Bank & Trust Co. 401(k) Profit Sharing Plan: the latest updated summary plan description along with the latest annual report or other instruments under which the plan was established or is operated. As the Profit Sharing Plan contains shares of the Suburban Illinois Bancorp, Inc., which are not publicly traded, please provide us with copies of all previous stock appraisals and valuations and records of purchases of stock of Suburban Illinois Bancorp., Inc by the Suburban Bank & Trust Co. 401(k) Profit Sharing Plan from the date Mr. DeGroot became a participant in the plan through the present date.

We have had the opportunity to review the Plante-Moran report entitled *"Appraisal of the Fair Market Value Per Share of the Common Stock as of December 31, 2006"* as well as the September 25, 2007 letter from Suzanne Armstrong offering to repurchase Mr. DeGroot's outstanding shares. For the reasons set forth below, we find the both the valuation conducted by Plante-Moran and the amount offered by Suburban to repurchase Mr. DeGroot's stock inconsistent with prior dealings between Suburban and the

Suburban Bank & Trust 401(k) Profit Sharing Plan. We also believe the stated valuation is inconsistent with previous stock repurchases by Suburban which have utilized a valuation based on controlling interest. We therefore demand that Mr. DeGroot's stock be reevaluated using a controlling interest determination consistent with prior stock purchases and sales.

A review of the Plante-Moran report indicates that Plante-Moran was authorized to determine the value of common stock at a minority interest valuation. As Plante-Moran notes in its report, this determination was inconsistent with previous determinations which used the controlling interest to determine stock price. This change in valuation methods significantly increases Suburban's liability to allegations of violation of ERISA's prohibited transactions rules, and breach of fiduciary duty both under ERISA and under Illinois corporation law with respect to treatment of minority shareholders.

ERISA prohibits fiduciaries from causing a plan to enter into "transactions in which the potential for misuse of plan assets is particularly great." Section 406, in particular, enumerates several types of transactions between plans and "parties in interest" that are strictly prohibited under ERISA. The prohibited transaction rules under section 406 are aimed at protecting plans from situations "where those dealing with the plan may have conflicting interests which could lead to self-dealing."

The prohibited transaction rules prohibit employee benefit plans from buying stock from, or selling stock to, an employer or owner, unless the plan has received "adequate consideration." Where the Plan buys shares from a non-public company, adequate consideration is defined as:

> the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well-informed about the asset and the market for that asset.

DOL Prop Reg 29 C.F.R. Part 2510.

The Plan's recent change in valuation methodology results in a patent inconsistency in stock valuation, subjecting the Plan fiduciaries to ERISA liability. No reasonable investor would be willing to buy a stock at the "controlling interest" value while being forced to sell the same stock at the substantially lower "minority interest" value. By changing from the "controlling interest" to the "minority interest" valuation, stock sales from the Plan at the "minority interest" valuation result in an unjustified profit to the Employer (in this case Suburban), which sold the stock to the Plan using a "controlling interest" methodology. To avoid such liability, the "controlling interest" methodology must be used consistently by Suburban when repurchasing shares from the Plan.

Furthermore, Ms. Hill's decision to change the stock valuation methodology breaches the fiduciary duty owed to Mr. DeGroot as a minority shareholder, as well as providing

remedies to Mr. DeGroot in accordance with the Illinois Business Corporations Act of 1983. 805 ILCS 5/12.56

A majority shareholder, or a group of shareholders who combine to form a majority, has a fiduciary duty to the corporation and to its minority shareholders if the majority shareholder dominates the board of directors and controls the corporation. *Feldheim v. Sims*, 344 Ill. App. 3d 135 (Ill. App. Ct. 2003). Self-dealing is one such type of breach. *Id.* Self-dealing occurs when the majority shareholders cause the dominated corporation to act in such a way that the majority shareholders receive something from the corporation to the exclusion and detriment of the minority shareholders. *Id.*

It is our understanding that following the initial issuance of shares, Ms. Hill (president of Suburban) and her deceased husband (formerly president of Suburban) were able to sell Suburban stock at the predetermined "controlling interest" price on multiple occasions. Ms. Hill's decision to alter the evaluation model to use a "minority interest" determination after she herself sold stock using the "controlling interest" methodology certainly suggests complicit self-dealing and a breach of the fiduciary duty owed to Mr. DeGroot. In light of such a breach, the Illinois Business Corporation Act of 1983 authorizes remedies, including, but not limited to dissolution of the corporation and the purchase by the corporation of all outstanding stock **without any discount for minority status or lack of marketability**. 805 ILC 5/12.56(e)(v).

In addition to the foregoing, ERISA's fiduciary requirements impose an obligation to act exclusively in the interest of plan participants. 29 U.S.C. § 1104. Additional duties flowing from the statutory obligation are described as follows:

> The first is a "duty of loyalty" which requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.' " *Id.* (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982)); *accord* 29 U.S.C. § 1104(a)(1) (requiring a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Second, ERISA imposes a "prudent person" fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man [sic] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *accord Berlin*, 858 F.2d at 1162. The prudent person standard, in combination with the duty of loyalty, "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Berlin*, 858 F.2d at 1162 (quoting *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir.1984)). Finally, ERISA requires that a fiduciary "act 'for the exclusive purpose' of providing benefits to plan beneficiaries." *Id.* (quoting *Donovan*, 680 F.2d at 271).

*Krohn v. Huron Mem.Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

We contend that efforts to purchase Mr. DeGroot's stock at an unfairly low valuation violates all three of the enumerated duties.

Finally, because the ERISA law is involved, we have reason to believe that Mr. DeGroot's termination was motivated at least in part to devalue his stock and to interfere with his ongoing participation in the 401k plan and other employee benefit plans. Such action would violate ERISA § 510 which prohibits an employer from interfering with an employee's attainment of benefits.

Accordingly, we maintain that Mr. DeGroot's termination was unlawful and that the stock repurchase offer that has been made is grossly inadequate. Although Mr. DeGroot would prefer to resolve this matter amicably without resorting to litigation, he is prepared to enforce his rights should we be unable to resolve his claims. We have included what we believe to be a fair evaluation of Mr. DeGroot's Suburban Illinois Bancorp, Inc. stock using the previously employed "controlling interest" methodology. As our figures indicate, shares of Suburban Illinois Bancorp, Inc. to be repurchased from Mr. DeGroot should be valued at $628.55/share. At this rate, Mr. DeGroot's 4,222 shares of common stock are worth $2,653,738.10.

We feel the forgoing is a fair and reasonable evaluation of Mr. DeGroot's stock and look forward to a positive reply to this comunication.

In addition to setting forth the claims we believe are at issue, we also wish that this letter be considered a claim appeal in accordance with 29 U.S.C. § 1133. If there is another mechanism of appeal that you believe needs to be followed, please advise us immediately so that we can submit an appropriate timely appeal.

Very truly yours,

Mark D. DeBofsky

cc:   David DeGroot