IN THE UNITED STATES DISTRICT COURT
FOR TH NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DAVID DE GROOT,** | ) |
| **Plaintiff,** | ) ) ) |
| -vs- | ) No. 08 C 1167 ) |
| **SUBURBAN BANK & TRUST CO.** **and SUBURBAN BANK & TRUST 401(k) PROFIT SHARING PLAN,** | ) Judge Samuel Der-Yeghiayan ) Magistrate Judge Maria G. Valdez ) ) ) |
| **Defendants.** | ) |

**DEFENDANTS' REPLY IN
SUPPORT OF THEIR 12(b)(6) MOTION TO DISMISS**

Plaintiff's reliance on the liberal pleading standards of F.R.C.P. 8 does not take into account the basic failures of the Complaint to (i) meet the basic requirements of recovering a benefit or right under 29 U.S.C. 1332 (a)(1) and 1332(a)(3) respectively; (ii) connect his employment termination with a loss of benefits or rights under his ERISA Plan; or (iii) create a duty on the part of Defendants to purchase his shares of SIB stock. As a result, Counts I – III of the Complaint must be dismissed for failure to state a cause of action.

I.   **Count I Fails to State A Claim Under § 1132(a)(1)(B).**

Despite Plaintiff's argument to the contrary, Count I clearly seeks a recovery of the fair market value of the 461 shares of SIB stock owned by DeGroot within the Plan. The fair market value of these stocks is a Plan benefit.[1] Plaintiff's argument that no benefit is sought can only be explained by his failure to allege compliance with his obligation to request a benefit and exhaust

---

[1]   Plaintiff advised this Court that Count I was not seeking a "benefit" under 1132(a)(1)(B) and dedicated an entire section of his brief to establish that point. (See Response, at 3 – 7, which contains Section II (A) entitled: "Plaintiff Is Not Seeking Benefits under § 1132(a)(1)(B).")

administrative remedies to resolve any disputes related to a purported denial of that benefit before filing a lawsuit. No where in Plaintiff's response does he dispute Defendants' arguments in its Motion to Dismiss that the Complaint failed to allege either a benefit from the Plan was requested or that a benefit from the Plan was denied.[2] As a result, the Court should dismiss the portion of Count I seeking relief pursuant to § 1132(a)(1)(B).

Plaintiff also does not dispute that he must exhaust all administrative remedies under the Plan before being permitted to file an action under 1132(a)(1)(B) and does not argue that such an allegation was made within the Complaint. (See Response, pg. 9)  Instead, DeGroot argues – contrary to his pleading and the Plan Summary attached thereto as Exhibit 1 – that no "avenues of appeal were made known to him" and  improperly requests this Court to take into consideration a document not identified in the Complaint. *Id.* (See also the Plan Summary - pages 20-21 - setting out appeal procedures for benefits denied.) As for the letter attached to the response brief, a Rule 12(b)(6) motion is to be based upon the face of the complaint and plaintiff cannot amend his pleading through either argument in response to the motion to dismiss or by attaching additional documents thereto. *Harrell v. USA*, 13 F.3d 232, 236 (7th Cir. 1993.) As such, the letter should be disregarded for purposes of this motion. Because Plaintiff failed to allege he exhausted his administrative remedies within the Plan, and no such fact can be inferred from the allegations that were made, Count I must be dismissed for failure to state a cause of action because it is missing a material element necessary to establish the claim.

---

[2]  Although the Response points out an 1132(a)(1)(b) claim can also be asserted for an explanation of benefits, no such allegation in the complaint was made and no such relief was requested.

II. **Plaintiff's Claim For Breach Of Fiduciary Duty Claim, Under §1132(a)(3), Must Be Dismissed.**

The portion of Count I based upon §1132(a)(3) must be dismissed because the Complaint clearly seeks the recovery of a Plan benefit recoverable under §1132(a)(1)(B). In the event this Court finds that such a benefit is not requested or that a defined benefit and equitable relief claims can be plead in the alternative, Count I fails to state a claim under §1132(a)(3) based upon an improper transaction under §1106(a)(1).

A. **Where Remedy Sought Is Clearly A Plan Benefit, A Plaintiff Is Not Able To Also Sue For Equitable Relief Under §1132(a)(3).**

Plaintiff does not disputed that he is prohibited from recovering under both sections §1132(a)(1)(B) and §1132(a)(3). (See Motion, pgs 5-6) Cases cited by Plaintiff allowing the two violations to be plead in the alternative each involve cases where it could not be determined at the onset which type of claim was being asserted. In this case, where the benefit is the fair market value of 461 shares of stock held in the Plan, the benefit is clearly identified and only the value of the benefit is at issue. As in *Clark v. Hewitt Assoc., LLC*, 294 F. Supp. 2d 946, -49-50 (N.D. Ill 2003), where a Plaintiff has a right to bring a claim under §1132(a)(1)(B) it is prohibited from bringing a claim under §1132(a)(3).

The fact that the Compliant failed to allege the necessary elements of the §1132(a)(1)(B) claim is of not consequence, because the context of the dispute is clear and Plaintiff is not being denied a remedy. *Id.* A dismissal of this action, until a complaint can be filed alleging a benefit was applied for, denied and administrative remedies were exhausted, is required under the law and will not result in Plaintiff's loss of his Plan benefits.

The motion to dismiss is not based upon the fact that money damages is the requested relief, but that relief sought has not yet been requested or denied. The fact that monetary damages can be recovered under §1132(a)(3) is not in dispute. *Bowerman v. Walmart*, 226 F.2d 574, 592 (7th Cir. 2000). In *Bowerman*, cited by Plaintiff, the Court permitted equitable relief in the form monetary restitution to wind back the clock on lost benefits. (Plaintiff failed to make a COBRA payment and lost medical benefits as a result. Plaintiff was allowed to make past COBRA payments and defendant was to pay medical expenses previously insured.) *Bowerman*, which involved a plaintiff that lost medical insurance coverage, is different from DeGroot's claim where the value of SIB stock at issue has not been lost, requested or denied to him. Plaintiff also likens his situation to that in *Anweiler v. American Elec. Power Ser. Co*, 3 F.3d 986, 992 (7th Cir. 1993), in which plaintiff's deceased husband executed an agreement that was purportedly signed without full disclosure of material facts. *Id*. at 990. Here, there is only an "offer" to purchase stock owned by a former officer of the Company - who has not alleged defendant withheld any material information – that was rejected by Plaintiff. As a result of the offer being rejected, no rights or benefits have been lost. The cases cited by plaintiff do not support his position that the value of the SIB stock in the plan is not a benefit that can be recovered under §1132(a)(1)(B).

**B.     Plaintiff's Claim For Breach Of Fiduciary Duty Under 1132(a)(3), For Engaging In A Prohibited Transaction, Must Be Dismissed Because An "Offer" Does Not Constitute A Transaction As A Matter Of Law.**

Plaintiff argues that he states a claim for a prohibited transaction, under 29 U.S.C. 1106(a)(1), based upon allegations that Suburban made an "offer" to purchase SIB stock that was rejected. Plaintiff relies upon M&R *Investment Co. v. Fitzsimmons*, 685 F.2d 283, 287 (9th Cir.

1982) for the proposition that Suburban's offer to purchase the shares in the Plan was a "transaction." This analysis is wrong, because *M&R Investment Co.* deals with a loan agreement that was entered into *after defendant's offer was accepted. Id.* In *M&R Investment Co.*, the Court held the a transaction occurred with "the contract's creation" and the prohibited transaction cannot be erased by "dissolving the improper [contractual] relationship," before funds are disbursed *Id.* This supports Defendants' argument that because no "contract" was reached between the parties and no transaction – prohibited or otherwise – had occurred within the scope of 29 U.S.C. 1106(a)(1).

Plaintiff's response also points out that the Motion does not challenge the allegation within the Complaint stating the offer made by Suburban was not "adequate" consideration for the SIB stock. (Response, 11.) Defendants are not disputing the value of the stock at this stage of the proceedings, but has instead established that an offer to purchase stock that was based upon financial analysis by Plante & Moran, LLC – as alleged in the complaint – does not constitute a prohibited transaction. (Complaint, ¶ 12) Because Plaintiff admits that Defendants otherwise have no fiduciary duty to purchase his SIB stock, the elements of a claim under 1132(a)(3) have not been set forth in Count I of the Complaint.

### III. Count II Fails to Allege Plaintiff's Termination Had Any Impact on a Plan Benefit or Right.

Defendants' motion to dismiss demonstrates that the Complaint does not properly alleged any impact to Plaintiff's benefits or rights under the Plan as a result of his termination as required to bring an action under 29 U.S.C. 1140. In response, Plaintiff notes the liberal pleading standard of FRCP 8 and states he did allege an impact to the value of his stock in the Plan because his termination allowed his stock to be valued as a "minority" stake as opposed to a

controlling stake. (Response, pg. 13, states: "Once terminated, Suburban knew it could make the low purchase offer to DeGroot and force him into a minority shareholder status.") This argument lacks any merit because there is no allegation that the voting rights of the 461 SIB shares Plaintiff owned within the Plan changed as a result of his employment status.[3] If the SIB shares plaintiff owned were a "minority" interest before termination they also constituted a minority interest after termination. To the extent Plaintiff's position as the Executive Vice President and Chief Financial Officer of Suburban may have placed him in "the control group" of SIB, that "control" was the result of his job duties and not the result of benefits of the Plan. Simply put, there is no allegation, even when read in a light most favorable to Plaintiff as required under FRCP 8, that can lead a reasonable person to conclude that Plaintiff's discharge reduced the value of the SIB stock in the Plan as to amount to a loss of "the use of benefits" as required to state a prima facie case under the statute. *Isbell v. Allstate Ins. Co*, 418 F.3d 788, 796 (7th Cir. 2005). The voting rights of the 461 shares of SIB stock in the Plan – and thus the value of those shares as constituting either a minority or controlling interest - was the same before and after termination. Because there is no reasonable basis to infer that Plaintiff's benefits in the Plan were impacted by his termination, Count II must be dismissed.

### IV. Count III Does Not Allege any Wrongful Conduct that Amounts to Oppression and Self-Dealing Under 805 ILCS 5/12.56.

Count III must be dismissed because Defendants have no duty to purchase DeGroot's shares of stock in SIB and an offer to purchase those shares at a price DeGroot alleges was less than fair market value does not constitute "oppressive" conduct under 805 ILCS 5/12.6.

---

[3] Minority Stockholder is defined as "Those stockholders of a corporation who hold so few shares in relation to the total outstanding that they are unable to control the management of the corporation or to elect directors." Black's Law Dictionary, Fifth Edition, with relevant page attached hereto as exhibit A.

Because Plaintiff does not refute that Defendants have no duty to purchase Plaintiff's shares of stock under Illinois law, Count III must be dismissed.[4] As a result, the "less than ... fair market value" offer Plaintiff alleges was made by Defendant cannot constitute "illegal, oppressive or fraudulent" conduct as required to state a claim under the statute. If Count III were to state a cause of action, every offer to purchase a minority shareholder's stock - which the potential seller perceived to be less than fair market value - would be a violation of the statute. Plaintiff has not alleged the offer to purchase was accompanied by wrongful behavior such as threats to waste assets or withhold distributions if the purchase is not agreed to. In Count III Plaintiff has alleged nothing more than an offer to purchase stock, made to a fully informed individual, which was declined because Plaintiff wanted more for his interest in the company.

Plaintiff does not cite any case in support of his contention that such activity is "illegal, oppressive or fraudulent" as required to state a cause of action. In fact, plaintiff specifically admits that Suburban does not have a "fiduciary duty to purchase DeGroot's shares of stock" and does not dispute the portion of Defendant's motion which states Illinois law does not require a corporation to purchase a shareholders stock. (See Motion at pg. 9) The statute cited does not require a minority stockholder's shares to be repurchased upon termination and no other allegations exist within the Complaint that create such a duty.

Finally, Plaintiff claims its Complaint is similar to the conclusory allegations which were upheld in *Flanagan v. Bernstein*, 1996 U.S. Dist. LEXIS 1915, *7 (N.D. Ill. Feb. 22, 1996) (Allegations were simply that directors controlled corporation for own benefit and acted oppressively.) Plaintiff is wrong in comparing the allegations in Count III of his complaint with

---

[4] Plaintiff's Response Brief admits that Count III does not state a cause of action for breach of fiduciary duty. ("Nowhere in the complaint does DeGroot allege that Suburban had a fiduciary duty to purchase DeGroot's shares of stock." Response at pg. 15.)

those in *Flanagan*. Instead of conclusory allegations that failed to allege the specific conduct that constituted the purported "oppressive" conduct, DeGroot specifically alleged: "Suburban's offer to repurchase DeGroot's 4,222 shares of SIB stock held privately at less than the shares' fair market value constitutes self-dealing and oppression by Suburban." (Complaint, ¶ 17.) Because making an offer to purchase shares of stock at a value perceived to be less than fair market value is not "illegal, oppressive or fraudulent," those allegations cannot be deemed to support a claim for a violation of the statute. In short, where DeGroot's may have only needed to plead bear bones conclusions to meet the liberal pleading requirements of FRCP 8, he has plead himself out of a claim by inserting specific facts as the sole basis for the allegedly oppressive conduct which defeat his purported claim.

Dated: July 21, 2008

                                      Respectfully submitted,

                                      SUBURBAN BANK & TRUST CO. and
                                      SUBURBAN BANK AND TRUST 401(k)
                                      PROFIT SHARING PLAN

                                      By:    s/ Michael J. Scotti, III
                                                 One of their attorneys

Michael J. Scotti, III #6205868
Daniel S. Dooley # 6274831
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6374
Facsimile: (312) 360-6994

1587618/07470-0012

# Exhibit A

# BLACK'S
# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

**HENRY CAMPBELL BLACK, M. A.**

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

FIFTH EDITION

BY

THE PUBLISHER'S EDITORIAL STAFF

Contributing Authors

JOSEPH R. NOLAN
Associate Justice, Massachusetts Supreme Judicial Court
and
M. J. CONNOLLY
Associate Professor of Linguistics
and Eastern Languages, Boston College

ST. PAUL MINN.
WEST PUBLISHING CO.
1979

EXHIBIT A

contemplates the existence of collective agreement, no effort is made to bring about a new agreement and the dispute arises over the meaning of the agreement or the proper application of the agreement. Piedmont Aviation, Inc. v. Air Line Pilots Ass'n, Intern., D.C.N.C., 347 F.Supp. 363, 365, 367. See also **Major dispute.**

**Minor fact.** In the law of evidence, a relative, collateral, or subordinate fact; a circumstance.

**Minority.** The state or condition of a minor; infancy. Opposite of "majority." See **Minor.**

The smaller number of votes of a deliberative assembly; opposed to majority (q.v.).

**Minority opinion.** See **Opinion.**

**Minority stockholder.** Those stockholders of a corporation who hold so few shares in relation to the total outstanding that they are unable to control the management of the corporation or to elect directors.

**Minor jurare non potest** /máynər jəréeriy nòn pówdəst/. A minor cannot make oath. An infant cannot be sworn on a jury.

**Minor minorem custodire non debet, alios enim præsumitur male regere qui seipsum regere nescit** /máynər mənórəm kàstədáyriy nòn débət, éyliyows íynəm prəz(y)úwmədər mǽliy réjəriy kwày siyípsəm réjəriy nésət/. A minor ought not to be guardian to a minor, for he who knows not how to govern himself is presumed to be unfit to govern others.

**Minor non tenetur respondere durante minori ætate, nisi in causa dotis, propter favorem** /máynər nòn təníydər rəspóndəriy d(y)ərǽntiy mənóray ətéydiy, náysay in dówdəs; próptər fəvórəm/. A minor is not bound to reply during his minority, except as a matter of favor in a cause of dower.

**Minor offenses.** See **Petty offense.**

**Minor qui infra ætatem 12 annorum fuerit uteagari non potest, nec extra legem poni, quia ante talem ætatem, non est sub lege aliqua, nec in decenna** /máynər kwày ínfrə ətéydəm d(y)uwódəsəm ənórəm fyúwərəd ətləgéray nòn pówdəst, nèk ékstrə líyjəm pównay, kwáyə ǽntiy téyləm ətéydəm, nón èst sòb líyjiy ǽləkwə nék in dəséna/. A minor who is under twelve years of age cannot be outlawed, nor placed without the law, because before such age he is not under any law, nor in a decennary.

**Minor septemdecim annis non admittitur fore executorem** /máynər sèptəmdésəm ǽnəs nòn ədmídədər fóriy əgzèkyətórəm/. A person under seventeen years is not admitted to be an executor. A rule of ecclesiastical law.

**Minors' estates.** Property of those who have not reached their legal majority and which must be administered after their death or during their lives under a court appointed fiduciary.

**Mint.** The place designated by law where bullion is coined into money under authority of the government.

**Mintage** /míntəj/. The charge or commission taken by the mint as a consideration for coining into money the bullion which is brought to it for that purpose; the same as "seigniorage."

Also that which is coined or stamped as money; the product of the mint.

**Mint-mark.** The masters and workers of the English mint, in the indentures made with them, agreed "to make a privy mark in the money they make, of gold and silver, so that they may know which moneys were of their own making." After every trial of the pix, having proved their moneys to be lawful, they were entitled to their *quietus* under the great seal, and to be discharged from all suits or actions.

**Mint-master.** One who manages the coinage.

**Minus** /máynəs/. Lat. In the civil law, less; less than. The word had also, in some connections, the sense of "not at all." For example, a debt remaining wholly unpaid was described as *"minus solutum."*

**Minus Latium** /máynəs léyshəm/. See **Jus Latium.**

**Minus solvit, qui tardius solvit** /máynəs sólvət kwày tárdiyəs sólvət/. He does not pay who pays too late.

**Minute.** In measures of time or circumference, a minute is the sixtieth part of an hour or degree.

**Minutes.** Memoranda or notes of a transaction or proceeding. Thus, the record of the proceedings at a meeting of directors or shareholders of a company is called the "minutes."

A memorandum of what takes place in court, made by authority of the court.

**Minutes book.** A book kept by the clerk or prothonotary of a court for entering memoranda of its proceedings. A record of all actions authorized at corporate board of directors' or stockholders' meeting.

**Minutio** /mən(y)úwsh(iy)ow/. Lat. In the civil law, a lessening; diminution or reduction.

**Miranda hearing.** A pre-trial proceeding to determine whether there has been compliance with the requirements of the Miranda Rule (q.v.). The outcome will decide whether the prosecution will be permitted to introduce into evidence statements of the defendant made during custodial interrogation. See **Miranda Rule.**

**Miranda Rule** /mərǽndə rúwl/. Prior to any custodial interrogation (that is, questioning initiated by law enforcement officers after a person is taken into custody or otherwise deprived of his freedom in any significant way) the person must be warned: 1. That he has a right to remain silent; 2. That any statement he does make may be used as evidence against him; 3. That he has a right to the presence of an attorney; 4. That if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

Unless and until these warnings or a waiver of these rights are demonstrated at the trial, no evidence obtained in the interrogation may be used against the accused. Miranda v. Arizona, 384 U.S. 436, 444, 478, 479, 86 S.Ct. 1602, 1612, 1630, 16 L.Ed.2d 694.

**Mis.** An inseparable particle used in composition, to mark an ill sense or depravation of the meaning; as