IN THE UNITED STATES DISTRICT COURT
FOR TH NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID DE GROOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 08 C 1167 |
| | ) | |
| SUBURBAN BANK & TRUST CO. | ) | Judge Samuel Der-Yeghiayan |
| and SUBURBAN BANK & TRUST | ) | Magistrate Judge Maria G. Valdez |
| 401(k) PROFIT SHARING PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO COMPLAINT

Defendants Suburban Bank & Trust Co. and Suburban Bank & Trust 401(k) Profit Sharing Plan, through their attorneys Freeborn & Peters LLP, provides the following answer to Plaintiff David DeGroot's complaint:

1.    This is a claim alleging that defendants have committed prohibited transactions in relation to the administration of the Suburban Bank & Trust 401(k) Profit Sharing Plan and that the defendants breached their fiduciary duty owed to plaintiff, a participant in said plan. Plaintiff also alleges that his employment with the Suburban Bank & Trust Co. was terminated in December 2006 in violation of 29 U.S.C. § 1140 in order to interfere with plaintiff's attainment of the full value of his bank stock held in both the 401(k) Profit Sharing Plan and privately by the plaintiff so that he could be treated as a minority shareholder rather than as a member of the control group. Finally, plaintiff brings a supplemental claim for breach of the Illinois Business Corporation Act of 1983.

**ANSWER:**    Defendants admit only that Petitioner makes claims under both 29 U.S.C. § 1140 and the Illinois Business Corporation Act of 1983, but denies that Petitioner is entitled to any such relief under the facts and law.

2.      Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and, in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district court jurisdiction to hear civil actions brought to remedy violations of the ERISA law.  In addition, the court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

**ANSWER:**     Defendants admit the allegations contained in paragraph no. 2.

3.      Venue is proper in the Northern District of Illinois.  29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391.

**ANSWER:**     Defendants admit the allegations contained in paragraph no. 3.

4.      The Plaintiff, David DeGroot ("DeGroot"), is and was a resident of Lombard, Illinois at all times relevant hereto.

**ANSWER:**     Defendants are without sufficient information to either admit or deny the allegations in paragraph 4 of Petitioner's Complaint.

5.      The Defendant, Suburban  Bank & Trust Co. ("Suburban"), is an Illinois corporation with its principal place of business in Elmhurst, Illinois.  Suburban was, at all times relevant hereto, DeGroot's former employer as well as the Plan Administrator of the Defendant, Suburban Bank & Trust Co. 401(k) Profit Sharing Plan ("Plan"), a defined contribution plan established for the benefit of Suburban's employees (a true and correct copy of which is attached hereto and by that reference incorporated herein as Exhibit "A").  At all times relevant hereto, Suburban and the Plan were doing business within the Northern District of Illinois.

**ANSWER:**     Defendants deny that a true and correct copy of the Plan was attached to the complaint, but admit the remaining allegations in paragraph 5.

6.      At all times relevant hereto, the Plan constituted an employee benefit plan within the scope of 29 U.S.C. §§ 1002(2) and (3); and incident to his employment with Suburban, Bake [sic] was a "participant" in the Plan as that term is defined by 29 U.S.C. § 1002(7).

**ANSWER:**     Defendants admit the allegations contained in paragraph 6.  (Defendants answer presumes that "Bake" is a typographical error and the drafter intended to write "DeGroot.")

7.    DeGroot was employed at Suburban from January 1992 until he was terminated without cause or justification on December 18, 2006. At the time he last worked for Suburban, DeGroot was employed as the Executive Vice President and Chief Financial Officer of Suburban.

**ANSWER:**    Defendants deny that DeGroot was terminated without cause or justification, but

admit the remaining allegations contained within paragraph 7.

8.    While DeGroot as employed at Suburban, in addition to serving as an officer of the bank, he was a member of Suburban's Board of Directors, as well as a participant in the Suburban Bank & Trust Co. 401(k) Profit Sharing Plan. The Plan was a defined contribution plan through which employee and employer contributions were held in a trust for the employees.

**ANSWER:**    Defendants deny DeGroot was a member of Suburban's Board of Directors, but

admit the remaining allegations contained within paragraph 8.

9.    In 1995, Suburban formed a holding company called Suburban Illinois Bancorp, Inc. (SIB), of which DeGroot purchased 434 shares. In 2003, DeGroot purchased additional shares of SIB, and currently holds, 4,222 shares in the company. All shares were purchased at a controlling interest valuation.

**ANSWER:**    Defendants deny DeGroot purchased his SIB shares at a controlling interest

valuation, but admit the remaining allegations in paragraph 9.

10.    In addition to the purchase of shares described above, in 2003, DeGroot directed Suburban, as administrator of the Plan, to purchase shares of SIB to be held in his account within the 401(k) Plan. After purchasing several additional shares, DeGroot currently owns 461 shares of SIB in his 401(k) plan. All shares are 100% vested and were purchased at a controlling interest price.

**ANSWER:**    Defendants deny that DeGroot owns 461 shares of SIB in his 401(k) Plan or that

any such shares were purchased at a controlling interest price. Defendants admit the remaining

allegations contained in paragraph 10.

11.    In 2002, SIB hired a third-party appraiser to determine the fair market value of its stock.  Utilizing a "controlling interest" valuation method, the fair market value of SIB's stock was determined in 2002 to be $264.00 per share.  The shares have substantially increased in value since 2002; and plaintiff has been informed and believes that the share price at the controlling interest valuation method was in excess of $625 per share at the time of his termination.

**ANSWER:**    Defendants admit SIB hired a third-party appraiser in 2002 to render business valuation services, but deny the purpose was to determine the fair market value of SIB stock or that a determination of fair market value was rendered.  Defendants are unable to admit or deny the remaining allegations contained in paragraph 11.

12.    Following DeGroot's termination, Suburban offered to buy back all of DeGroot's shares in the holding company.  The offer was based on an appraisal performed by Plante & Moran, PLLC, which valued the SIB stock as of December 31, 2006.  However, rather than utilizing a "controlling interest" valuation, which was the basis upon which the shares were valued at purchase and upon prior valuations, Plante & Moran utilized a methodology that failed to adequately value the SIB stock, and also valued the shares using a substantially lower "minority interest" valuation method.

**ANSWER:**    Defendants admit Suburban offered to buy back DeGroot's SIB shares held outside of his 401(k) plan - after he was terminated - and that the price offered was based in part on Plante & Moran, PLLC's appraisal of SIB stock as of December 31, 2006.  Defendants deny the remaining allegations contained in paragraph 12.

13.    Utilizing the lower "minority interest" valuation method, Plante & Moran appraised the stock value at $388.00 per share, although it acknowledged in its report that the valuation method used was inconsistent with previous determinations which had utilized the "controlling interest" method.

**ANSWER:**    Defendants admit that Plante & Moran appraised SIB stock to have a fair market of $388 per share, within the context of a specific assignment, but are unable to admit or deny the remaining allegations contained in paragraph 13.

14.    Had the proper "controlling interest" valuation standard been used, SIB's stock would have been valued at or near $628.55 per share.

**ANSWER:**    Defendants deny the allegations contained in paragraph 14.

15.    Plaintiff has been informed and believes that other stock purchased by Suburban have been made at the controlling interest price and at a valuation substantially higher than the per share valuation offered to DeGroot.

**ANSWER:**    Defendants are unable to admit or deny the allegations contained in paragraph 15 and therefore deny them.

## Count I

1-15.    Plaintiff realleges paragraphs 1-13 [sic] of the General Allegations as paragraphs 1-15 of Count I of this complaint.

**ANSWER:**    Defendants reassert its responses to paragraphs 1 – 15 as its answers to paragraphs 1-15 of Count I.

16.    DeGroot and Suburban agreed that Suburban would repurchase the shares of SIB stock in his 401(k) following the end of his employment.  The Plan contains a provision allowing for payments of 401(k) benefits "as soon as administratively feasible on or after the Valuation or Allocation date." (Plan at 16).

**ANSWER:**    Defendants admit the document attached as an Exhibit to the complaint includes the words as cited, but deny the remaining allegations in paragraph 16.

17.    ERISA law, at § 404, lays out the general fiduciary duties of plan administrators, including acting in the interest of plan participants by investigating proposed transactions with "care, skill, prudence, and diligence." 29 U.S.C. 1104(a)(1)(B).  The ERISA law also contains provisions codified in § 406 that explicitly prohibit a fiduciary from engaging in the sale or exchange of property between the Plan and a party in interest. 29 U.S.C. 1106(a)(1(A).  An exception to such a prohibited transaction is found in ERISA § 408 which allows such a sale so long as the property is sold for "adequate consideration." 29 U.S.C. 1108(e)(1).  "Adequate consideration" has been defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary…" The "fair market value of an asset is:

> the price at which an asset would change hands between a willing
> buyer and willing seller when the former is not under any
> compulsion to buy and the latter is not under any compulsion to
> sell, and both parties are able, as well as willing, to trader [sic] and
> are well-informed about the asset and the market for that asset.

DOL Prop Reg 29 C.F.R. Part 2510.

**ANSWER:** The allegations contained in paragraph 17 state conclusions of law which require no

answer. To the extent the Court deems the allegations to be facts, Defendants deny the

allegations contained in paragraph 17 and further state that all claims pursuant to 29 U.S.C.

1106(a)(1(A) and 29 U.S.C. 1108(e)(1) have been dismissed with prejudice pursuant to the

Court's Memorandum Opinion dated August 6, 2008.


18.    No reasonable stock purchaser such as DeGroot would purchase stock at a higher
controlling interest valuation but then sell the stock at a lower minority interest valuation.
Because Suburban has been inconsistent in valuing its stock and having it appraised at its fair
market value, Suburban and the Plan breached their fiduciary duty owed to DeGroot; and
pursuant to 29 U.S.C. § 1132(a)(1)(B) or § 1132(a)(3), the court must determine the fair market
value for the shares at issue.

**ANSWER:**    Defendants deny the allegations contained in paragraph 18 and further state that

that all claims pursuant to 29 U.S.C. § 1132(a)(3) have been dismissed with prejudice pursuant to

the Court's Memorandum Opinion dated August 6, 2008.


### Count II

1-15.    Plaintiff realleges paragraphs 1-15 of the General Allegations as paragraphs 1-15
of Count I [sic] of this complaint.

**ANSWER:**    Defendants reassert its responses to paragraphs 1 – 15 as its answers to

paragraphs 1-15 of Count II.

16.    It is a violation of the ERISA law to discharge an individual in order to interfere with their attainment of a Plan benefit.  29 U.S.C. § 1140.

**ANSWER:**    Defendants admit the allegations contained in paragraph 16.


17.    Suburban's termination of DeGroot in December 2006 was motivated in whole or in part by an intent to deprive DeGroot of the fair market value of his stock, in violation of 29 U.S.C. § 1140.

**ANSWER:**    Defendants deny the allegations contained in paragraph 17.


### Count III


1-15.    Plaintiff realleges paragraphs 1-15 of the General Allegations as paragraphs 1-15 of Count I [sic] of this complaint.

**ANSWER:**    Defendants reassert its responses to paragraphs 1 – 15 as its answers to

paragraphs 1-15 of Count III.


16.    At all times relevant hereto, Suburban owed a fiduciary duty to DeGroot as a minority shareholder as well as a duty to avoid self-dealing.

**ANSWER:**    Defendants deny the allegations contained in paragraph 16.


17.    In 2007, Suburban's offer to repurchase DeGroot's 4,222 shares of SIB stock held privately at less than the shares' fair market value constitutes self-dealing and oppression by Suburban.

**ANSWER:**    Defendants deny the allegations contained in paragraph 17.


17.[sic]    Under Illinois law, 805 ILCS 5/12.56, the court has the power to remedy such self-dealing by requiring the corporation to repurchase the stock at fair market value without any discount for minority status or lack of marketability.

**ANSWER:**    Defendants deny the allegations contained in this paragraph.

WHEREFORE, Defendants Suburban Bank & Trust Co. and Suburban Bank & Trust 401(k) Profit Sharing Plan request that this Answer be deemed good and sufficient, and that after due proceedings had, that there be judgment in favor of Defendants, dismissing Petitioner's Complaint.

Dated: August 26, 2008

Respectfully submitted,

SUBURBAN BANK & TRUST CO. and SUBURBAN BANK AND TRUST 401(k) PROFIT SHARING PLAN

By: ___ s/ Michael J. Scotti, III _____
        One of their attorneys

1604636v1/07470-0012